IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

```
ROBERT RICKLES,                         )   Civil No. 03-908-JE
                                        )
              Plaintiff,                )
                                        )
         v.                             )   FINDINGS AND
                                        )   RECOMMENDATION/
SCOTT TAYLOR, Asst. Director,           )   ORDER
Department of Corrections (DOC);        )
JOSEPH RICHTER, (former) Health         )
Services Administrator, DOC;            )
STEVE SHELTON, Medical Director,        )
DOC; DR. GORHAM, Dental Director,       )
DOC; HEATHER VILLANUEVA, Health         )
Services Manager, Two Rivers            )
Correctional Institution (TRCI);        )
BRIDGETT WHELAN, Nurse Manager,         )
TRCI; GREG LYTLE, M.D., Physician,      )
TRCI; DR. PUTNAM, Dentist, TRCI;        )
MS. FUERSTENBERG, Dental Asst.,         )
TRCI; LARRY HERRING,                    )
                                        )
              Defendants.               )
_____)
```

    Robert Rickles
    Oregon State Penitentiary
    SID# 3300373
    2605 State Street
    Salem, OR 97310
        Plaintiff Pro Se

FINDINGS & RECOMMENDATION/ORDER - 1

         Kathryn A. Cottrell
         State of Oregon
         Department of Justice
         1162 Court Street NE
         Salem, OR 97301
                  Attorney for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Robert Rickles, an inmate in the custody of the Oregon Department of Corrections, brings this civil rights action against various prison officials, alleging a longstanding refusal to furnish Rickles with necessary medical care for an umbilical hernia, diabetes, and hepatitis C, and refusal to provide necessary dental care.

Pending are Defendants' Motion (docket # 30) to Dismiss for failure to exhaust administrative remedies, Plaintiff's Motion (# 42) for Leave to File a (Second) Amended Complaint, Plaintiff's Motion (# 40) in Limine, Plaintiff's Renewed Motion (# 41) for Appointment of Counsel, and Plaintiff's Amended Renewed Motion (# 44) for Appointment of Counsel.

A.  **Exhaustion of Remedies**

The Prison Litigation Reform Act of 1995 ("PLRA") requires inmates to exhaust "such administrative remedies as are available" before commencing an action for redress "with respect to prison conditions." 42 U.S.C. § 1997e(a). Although the statute refers only to "prison conditions," the Supreme Court has expansively construed that language to include a wide variety of other claims brought by inmates.

See Porter v. Nussle, 534 U.S. 516 (2002) (assault and battery construed as a "prison condition").

Defendants "concede that Rickles has completed the grievance process with regard to his hernia claim and with regard to his dental claim with respect to his cavities." That clearly is correct. Rickles repeatedly requested, and was denied, surgery to repair his hernia and dental work to repair his teeth.

In this motion, Defendants contend Rickles has not exhausted his administrative remedies regarding "his request for a root canal and his hepatitis C condition."

The record reflects that Rickles filed numerous grievances seeking treatment for his hepatitis C condition. However, that issue is now moot. Rickles has since requested that his hepatitis C claim be dismissed without prejudice as "he is a mandatory class member of Anstett v. State of Oregon (USDC Case No. 01-1619-BR)." "[P]laintiff desires to . . . revert to his class member status."

Rickles also exhausted the available remedies regarding his dental claim. The following discussion reflects only written requests that he made for dental treatment, and not any additional oral communications he may have made.

On or about January 27, 2002, Plaintiff requested that his teeth be "cleaned and fixed. I've been in custody for over a year and have a few cavities and a couple of fillings

missing." The response from staff member "M. Fuerstenburg" was, "You will be placed on the list."

About June 24, 2002, Plaintiff complained he had been waiting months for dental work to repair cavities and a missing filling. "How much longer will I need to wait," he asked. Fuerstenburg responded, "Scheduled 9-13-02."

On or about October 13, 2002, Plaintiff wrote again, saying they had cleaned his teeth but not repaired any of his cavities. Instead, he had been told "I was to be placed on the list." Plaintiff asked, "When is the actual work going to be done? Where am I on that list?" Fuerstenburg responded that Plaintiff was # 779 on the waiting list and they were currently serving # 466.

About October 15, 2002, Plaintiff wrote back, saying those numbers were meaningless to him, as it revealed nothing about the length of time before they reached # 779. Fuerstenburg responded, "Sorry, but that's how we do our scheduling. It works for us . . . ."

On or about November 8, 2002, Plaintiff complained that his gums were bleeding and he needed dental work. Fuerstenburg responded that dental problems "are caused from poor hygiene along with health problems."

About December 13, 2002, Plaintiff again asked where he was on the list. Fuerstenburg responded, "you are # 779 and we are currently at # 544.

On or about February 23, 2003, Plaintiff inquired, "what # I am on the list an[d] approximately when my cavities will be filled." Staff member Herrera responded, "# 779."

Plaintiff then filed a Grievance dated March 2, 2003, addressed to Health Services Manager Villanueva. Plaintiff said he had been waiting 26 months for dental treatment, only to repeatedly be "placated with 'you are on the list.'" "I have the right to be free from cruel and unusual punishment by getting adequate and timely medical treatment not diliberate (sic) indifference because of the budget crisis." Plaintiff requested that they fix his cavities.

RN Nurse Manager B. Whelan responded, "Your dental concerns are of a non-emergent nature. Had you obtained routine dental care prior to your incarceration, you would probably not be experiencing the amount of dental problems you continue to request treatment for. You are on the routine care list and will be seen as time allows. Cavities are not an emergency . . . ."

On or about March 16, 2003, Plaintiff filed an appeal to Health Services Manager Villanueva. Plaintiff asserted that "'you are on the list' is not meaningful treatment nor can it be construed as satisfying adequate medical care to meet minimum requirements of the Eighth Amendment . . . . " Plaintiff also objected to what he perceived as blaming inmates for having health problems, in order to justify the prison's failure to properly treat those problems. Plaintiff

FINDINGS AND RECOMMENDATION/ORDER - 5

also stated that "OAR 291-124-005(3)(a) mandates that inmates are to be provided with medical/dental care consistent with the level of such standards for care within the community. This is departmental policy." Plaintiff requested that the prison repair his teeth and hire more dentists to adequately care for all prisoners' needs "instead of systematic and willful criminal neglect."

The appeal was denied by R. Gorham, ODOC Dental Director.

Plaintiff filed yet another grievance on April 22, 2003, directed to Dental Director Gorham, asking "Would you or your family be satisfied with a dental health care plan that would allow known cavities to go untreated for 17 months?" Plaintiff recounted his prior efforts to obtain redress for this problem, and again requested proper dental care. Assistant Director Scott Taylor responded[1] that "due to illness, there has been a shortage of dental staff at TRCI, and the emergent dental treatments have taken up most of the dental clinic time. Dr. Putnam reports that the treatment you are requesting is not emergent, and you will be scheduled as time permits, with the emergencies having priority."

On May 16, 2003, Plaintiff complained that an abscess had formed. "I believe had the cavity at the gum line on this tooth been repaired in a timely manner it would not be abscessed. What's the plan now?" Another communication,

---

[1] Taylor's letter bears a date of May 12, 2002. Obviously, that was an error, and it should have read 2003.

FINDINGS AND RECOMMENDATION/ORDER - 6

dated May 22, 2003, indicates that a prison dentist had recommended a root canal be performed, but that recommendation then had to be approved by a prison "TLC Committee." Plaintiff asked when this would occur. Staff Member Durand responded that the TLC Committee would not meet until June 4, 2003. "After that it will be a matter of scheduling. Can't give you an exact date or length of time."

On or about June 10, 2003, Plaintiff again complained of pain and inquired about the status of his root canal, and what the TLC Committee had decided. Durand responded, "Haven't heard from them yet."

About June 15, 2003, Plaintiff again complained of pain, and inquired about the status of his root canal. Durand responded "The meeting is in Salem. We have not received yours yet. Yours was not the only one."

On July 1, 2003, Plaintiff filed yet another grievance with Health Services Manager Villanueva, complaining that he still had not received treatment for his abscessed tooth. He requested a root canal.

RN Nurse Manager Whelan responded, "your request for a root canal has been sent to the Therapeutic Level of Care Committee. We have not received their recommendations."

On or about July 29, 2003, Plaintiff filed an appeal, complaining he still had not received treatment for his abscessed tooth. By now, more than two months had passed since the prison dentist had recommended a root canal, and it

FINDINGS AND RECOMMENDATION/ORDER - 7

had been at least eighteen months since Plaintiff had requested that his cavities be filled and missing filling repaired.

On or about August 28, 2003, ODOC Health Services Administrator Larry Herring responded that a root canal had been approved by the TLC Committee, and arrangements had now been made for that work to be performed.

In his opposition to the motion to dismiss,[2] Plaintiff states that he was then transferred to OSCI, and transported to the University of Oregon Health Science Center dental school for treatment. There, he was informed that because treatment had been delayed for so long, the tooth could no longer be saved and had to be extracted.

This record supports Plaintiff's position that he did exhaust his available administrative remedies before seeking recourse from the federal court. He repeatedly sought treatment, and was told he would have to wait, and wait. He repeatedly filed grievances, and appeals, which were denied. Even after the prison dentist recommended a root canal for an abscessed tooth, treatment was delayed for months while the dentist awaited approval from the Department of Correction's

---

[2] It is unclear why this fact is not pled in the First Amended Complaint. It may have transpired after that document was filed. Since an action should not be dismissed with prejudice unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986), I will permit Plaintiff to add factual allegations concerning the loss of his tooth by way of an amended complaint.

FINDINGS AND RECOMMENDATION/ORDER - 8

TLC Committee. By the time Plaintiff's request for treatment was finally granted, that approval reportedly came too late to save the tooth. Plaintiff also alleges that he suffered considerable pain and anxiety during these prolonged delays.

The requirement that an inmate exhaust remedies has two valid purposes. "The first is to protect an administrative agency's authority by giving the agency the first opportunity to resolve a controversy before a court intervenes in the dispute. The second is to promote judicial efficiency by either resolving the dispute outside of the courts, or by producing a factual record that can aid the court in processing a plaintiff's claim." Ngo v. Woodford, 403 F.3d 620, 624 (9th Cir. 2005) (citations omitted).

Defendants had numerous opportunities to address the situation before this action was commenced. Defendants do not profess that they would have done anything differently, had only the matter been brought to the attention of some higher-up.

Defendants do argue that the "root canal" is a distinct issue entirely separate from Plaintiff's repeated request to have his teeth repaired. On this record, there is no basis for drawing such a distinction. Plaintiff repeatedly complained of missing fillings, cavities, and other dental problems, and requested that his teeth be repaired. Prison officials repeatedly acknowledged that Plaintiff required such care, yet repeatedly delayed performing that work, citing

budgetary problems (*i.e.,* we don't have enough dentists on staff to treat all inmates), or faulted Plaintiff for needing dental work.

Eventually, the situation apparently progressed to where a root canal was necessary. The prison dentist reportedly recommended that it be performed, yet no action could be taken without approval from the TLC Committee. Plaintiff repeatedly inquired when they would act, he complained that they had not yet acted, he filed grievances and appeals, and he wrote to various prison medical officials seeking prompt action. Defendants do not identify anything more that Plaintiff could have done to expedite approval of that dental work. Unfortunately--accepting Plaintiff's allegations as true for purposes of this motion--approval of the dental work was delayed for so long that the tooth could not be saved. Judging by the record before me, the failure to provide dental work, the necessity for a root canal, the delay in providing the root canal, and the ultimate loss of the tooth, all appear to be a series of related events, not entirely distinct events as Defendants contend.

Defendants also argue it is not enough that Plaintiff filed a grievance concerning the dental issue, and then exhausted all levels of appeal provided by ODOC. Rather, Defendants contend, each time Plaintiff complained anew about the continuing failure to provide the dental care, he effectively initiated a brand new grievance process, and was

FINDINGS AND RECOMMENDATION/ORDER - 10

required to exhaust every layer of appeal within the ODOC system yet again. I disagree, at least in the circumstances of this case.

Plaintiff exhausted every administrative remedy available to him. There was nothing more that he could do to alter the agency's position. The various grievances and inquiries were closely related, both temporally and substantively. Essentially, Plaintiff kept asking when they were going to do that which he had requested, and which they had promised to do. While there might be some circumstances that could trigger a new round of exhaustion requirements, this is not one of them. Indeed, if I accepted Defendants' position, the Plaintiff would be penalized for his persistence in bringing the matter to the attention of prison officials and for seeking to remedy the problem without having to resort to litigation. Surely that would not further the intent of the PLRA, nor is that result compelled by the text of that statute.

Defendants' motion to dismiss for failure to exhaust administrative remedies should be denied.

B. **Plaintiff's Motion for Leave to File a (Second) Amended Complaint**

Plaintiff seeks leave to file a Second Amended Complaint. The motion states that a copy of that document is attached, but the attachment was not received by this court.

FINDINGS AND RECOMMENDATION/ORDER - 11

Nevertheless, it is possible to discern the proposed amendments from the briefing.[3]

First, Plaintiff seeks to dismiss, without prejudice, his hepatitis C claim in deference to the mandatory class action in <u>Anstett v. State of Oregon</u>, Civil No. 01-1619-BR. That request should be granted. This revision can be accomplished without having to file an Amended Complaint.

Second, Plaintiff proposes to add "Doe" defendants because he does not know the names of the members of the TLC Committee(s) that ruled on his requests for dental care and for surgical repair of his hernia.

A § 1983 action cannot be maintained against a Doe defendant. The proper procedure is for Plaintiff to obtain those names by way of an Interrogatory under Fed. R. Civ. P. 33. Alternatively, if asked, defense counsel may agree to voluntarily provide that information to Plaintiff, as there appear to be no grounds for withholding such information.

Next, Plaintiff proposes to add the Department of Corrections as a defendant, apparently for purposes of obtaining prospective injunctive relief. Defendants counter that because the Department is an arm of the State, the

---

[3] Through no fault of the parties, the court was delayed in ruling on Plaintiff's motion. It has now been under advisement for many months, for which the court apologizes to the parties. Since the gist of the proposed amendments is discussed in the briefing, I will not delay this case further by requiring Plaintiff to submit a copy of the proposed amended complaint, as I am able to decide the motion without it.

FINDINGS AND RECOMMENDATION/ORDER - 12

Eleventh Amendment precludes the Department from being named as a defendant. Plaintiff responds that the Eleventh Amendment does not apply to claims for prospective injunctive relief.

Both sides are partly correct. The State is not a proper defendant in a § 1983 action, because that law does not expressly include a state among the list of persons or entities that may be sued. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989). However, that does not fully resolve the issue. A plaintiff may still assert a § 1983 claim seeking prospective injunctive relief for violations of his federal constitutional rights, providing he names as defendants the particular state official or officials from whom relief is sought, *i.e.,* the person who is to perform the act or who has authority to order that the act be performed. <u>See</u> <u>Ex Parte Young</u>, 209 U.S. 123 (1908). Such persons are properly named as defendants in their "official capacities." Conversely, when damages are sought against state officials for deprivation of constitutional rights, the persons personally responsible for the deprivation and injury are properly named as defendants in their "individual capacities." If both damages and prospective injunctive relief are sought from the same person, he should be named as a defendant in both his official and individual capacities. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21 (1991).

Although Plaintiff cannot add the Department of Corrections as a defendant, he can name as a defendant those persons who would be proper defendants for purposes of any damages or prospective injunctive relief that might ultimately be granted in this action. That, of course, would require filing an amended complaint to add those additional defendants and to state, in some detail, facts sufficient to warrant granting relief against each of those persons.

Finally, Plaintiff proposes to add a claim for violation of the Americans with Disabilities Act. Without the proposed complaint before me, I cannot tell precisely what Plaintiff intends to assert, but it is difficult to imagine how the facts of this case could state a claim for violation of the ADA. Title I (employment) and Title III (public accommodations) obviously do not apply. Title II (public facilities) is applicable to prisons. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998). However, to state a viable claim, Plaintiff must plead and prove, among other things, that, "by *reason* of a disability" he has been "excluded from participation in or . . . denied the benefits of the services, programs, or activities of" the prison, or been "subjected to discrimination." 42 U.S.C. § 12132 (emphasis added). Cf. Butler v. Adams, 397 F.3d 1181 (9th Cir. 2005) (visually-impaired inmate alleged he was denied help in walking to the dining hall, library, religious

services, medical appointments, and other activities; was repeatedly injured while attempting to walk without assistance; there was no railing in showers or toilets, and no Braille programs or persons to assist him in reading or preparing legal materials).

While I will not preclude him from attempting to state such a claim, Plaintiff may be hard-pressed to do so. He must also ensure that he has exhausted any administrative remedies the prison may provide with regard to claims involving disabilities. See Butler, 397 F.3d at 1183 (California requires prisoner to complete a form requesting a reasonable accommodation, and then complete any appeals).

If Plaintiff does decide to file an amended complaint--whether to add additional defendants in their individual or official capacities, allege facts concerning the loss of his tooth, or attempt to state an ADA claim--the document should be entitled "Third Amended Complaint" so there is no confusion with prior documents. Plaintiff has permission from the court to file a Third Amended Complaint, if he chooses. As always, a copy must be served on opposing counsel. The new complaint must be complete in itself, *i.e.,* it replaces the prior versions, so it should contain all facts, claims, requests for relief, and any attached exhibits, and not rely upon the earlier documents.

Plaintiff also requests that the Marshal be ordered to serve the amended complaint upon the Defendants, as defense counsel refused to accept service. The reason defense counsel gave in her letter was that Plaintiff was proposing to add Doe defendants, who she could not identify and did not represent, and therefore could not accept service on behalf of. Assuming any amended complaint avoids that error, Plaintiff may find defense counsel more amenable to his request to accept service. In any event, that issue can be addressed at a future time, if it becomes necessary.

C. **Plaintiff's Motion in Limine**

Plaintiff moves to exclude certain matters, such as his criminal history, in the event this case goes to trial. That motion is denied as premature, with leave to renew in the event this case actually does go to trial.

D. **Plaintiff's Renewed Motions for Appointment of Counsel**

The court has no funds with which to appoint counsel in civil actions. At this point, Plaintiff appears capable of adequately articulating his claims. Accordingly, those motions are denied.

## Conclusion

Defendants' Motion (docket # 30) to Dismiss for failure to exhaust administrative remedies should be denied. Plaintiff's request to dismiss his hepatitis C claim, without prejudice, should be granted.

Plaintiff's Motion (# 42) for Leave to File a (Second) Amended Complaint is denied, with leave to file a Third Amended Complaint as set forth above.  Plaintiff's Motion (#40) in Limine is denied as premature.  Plaintiff's Renewed Motion (#41) for Appointment of Counsel, and Plaintiff's Amended Renewed Motion (#44) for Appointment of Counsel, are denied.

### Scheduling Order

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due September 6, 2005.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 22nd day of August, 2005.

/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge